126 F.3d 119
 Abdul-Shahid Farrakhan MUHAMMAD, Plaintiff-Appellant,
Darrell X. McKinney, Victor Santos, Curtis McDowell, Uriah
Webb, Horace Betard, Lashango Legrand, and Kenneth
Hammonds, Plaintiffs,
v.
CITY OF NEW YORK DEPARTMENT OF CORRECTIONS, Anthony
Schembri, Commissioner, City of New York Department of
Corrections; Allyn R. Sielaff, former Commissioner, City of
New York Department of Corrections; and Catherine M. Abate,
former Commissioner, City of New York Department of
Corrections, Defendants-Appellees.
 No. 539, Docket 96-2042
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 23, 1997.
Decided Sept. 26, 1997.
 
 Mitchell A. Karlan, New York City (Robin L. Baker, W. James Hall, Leslie E. Moore, Preetinder S. Bharara, Sue J. Nam, Gibson, Dunn & Crutcher, LLP, of counsel), for Plaintiff-Appellant.
 Cheryl Payer, Assistant Corporation Counsel, New York City (Paul A. Crotty, Corporation Counsel, Stephen J. McGrath, Martha Calhoun, of counsel), for Defendants-Appellees.
 Before: OAKES, KEARSE and JACOBS, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiff Abdul-Shahid Farrakhan Muhammad is a member of the Nation of Islam who was imprisoned awaiting trial from 1989 to 1991 in the Bronx House of Detention and various jails in Rikers Island in the City of New York. He claims that the New York City Department of Corrections ("DOC") and those responsible for administering the City prison system violated his rights under federal law by interfering with his religious liberties. Although in the district court he asserted claims for monetary, declaratory, and injunctive relief, on this appeal he pursues only his claim for injunctive relief. Specifically, Muhammad seeks prospective injunctive relief requiring the City Defendants (i) to afford separate congregate religious services for Nation of Islam inmates, and (ii) to recruit prison chaplains on a basis that would allow the hiring of Nation of Islam ministers.
 
 
 2
 Following a seven-day bench trial, the district court issued detailed findings of fact and conclusions of law. The court held that Muhammad was entitled to no relief under either the Religious Freedom Restoration Act ("RFRA") or the First Amendment. Plaintiff appealed these rulings, but while the appeal was pending, the Supreme Court struck down RFRA as unconstitutional. See City of Boerne v. Flores, --- U.S. ----, ----, 117 S.Ct. 2157, 2160, 138 L.Ed.2d 624 (1997). We now consider only Muhammad's claims for injunctive relief under the First Amendment, and as to them, we dismiss the appeal as moot.
 
 BACKGROUND
 
 3
 This factual summary is drawn primarily from the district court's reported opinion, with which we assume familiarity. See Muhammad v. City of New York Dep't of Corrections, 904 F.Supp. 161, 167-87 (S.D.N.Y.1995).
 
 
 4
 A. The Nation of Islam.
 
 
 5
 The Nation of Islam is one of at least twenty sects of Islam. The Nation of Islam was founded in 1930 by Fard Muhammad (born Wallace D. Fard), who vanished four years later, and was succeeded by Elijah Muhammad. The Nation of Islam's theology and message address the need for economic well-being, dignity, and physical security from the police.
 
 
 6
 The Nation of Islam shares many beliefs and practices with other sects of Islam. All Muslims, including Nation of Islam followers, observe Ramadan, follow the Koran, accept that Allah is the only God and that Muhammad is Allah's prophet, and accept that Islam is based on "five pillars": declaration of faith, prayer, charity, fasting, and pilgrimage to Mecca. Unlike other Muslims, Nation of Islam members believe that Allah came to the United States in 1930 in the person of Fard Muhammad, and that Elijah Muhammad was God's messenger. Nation of Islam members do not recognize Orthodox Muslim priests (Imams) as religious leaders, and instead turn to their own ministers. The Nation of Islam also has a distinctive story of creation that accounts for the Nation of Islam tenet that black people are divine, and that white people are not.
 
 
 7
 The observant among Nation of Islam followers typically attend at least two congregational meetings a week. The religious service commonly held on Sunday usually begins with a Muslim prayer, and includes a lecture by the Minister, often on a theme germane to the black community.
 
 
 8
 Adherents of Nation of Islam are directed to pray five times daily, facing east; to be clean-shaven; and to eschew pork, gambling, smoking, alcohol, drugs, gluttony, credit, and sex out of marriage.
 
 
 9
 B. Religious Accommodations in City Prisons.
 
 
 10
 The DOC presently operates sixteen jails. Custody in these facilities is generally temporary. More than seventy percent of the inmates are pre-trial detainees who either are being held without bail or have been unable to make bail. The rest include city-sentenced inmates serving one year or less; paroled state inmates who have been rearrested as a result of parole violations and are in DOC custody pending a hearing or remand to the state system; and sentenced state prisoners who are in temporary DOC custody for various reasons.
 
 
 11
 The DOC provides generic congregate religious services for four major faith groups in its prisons: Catholics, Jews, Protestants, and Muslims. It employs forty-four chaplains, eleven of whom are Muslim; none is a Nation of Islam minister. Chaplains are hired after their credentials are screened and approved by various ecclesiastical organizations. The credentials of Imams are screened by the World Community of Islam, and then the Imams are interviewed by prison personnel. Prison officials testified that they would hire Nation of Islam chaplains if any were approved. However, the chance of such approval by the World Community is remote.
 
 
 12
 Apart from congregate worship, inmates are allowed to meet with individual spiritual advisors of their choice, and are entitled to an unlimited number of such visits. The DOC also uses the services of several hundred religious volunteers, including Nation of Islam members and ministers who serve the inmate population as guest speakers and by conducting personal development workshops. Additionally, study classes are available in the Koran, the Bible, and the Torah.
 
 
 13
 C. Muhammad's Prison Worship in DOC Facilities.
 
 
 14
 Muhammad joined the Nation of Islam in the 1980s, before his imprisonment. From 1989 to 1991, he was incarcerated in various DOC facilities, including several jails on Rikers Island, while awaiting trial. While on Rikers Island, Muhammad individually requested separate Muslim services for Nation of Islam members, backed by his desire for services that had a more direct and specific bearing on the condition of African-Americans. Such services were never provided. After his conviction, Muhammad was transferred to the custody of the State of New York Department of Correctional Services. He was paroled in January 1994.
 
 
 15
 D. Procedural History.
 
 
 16
 In June 1993--following Muhammad's departure from the City's prison system--he commenced this action pro se against the City DOC. After the district court appointed counsel to represent him, seven additional plaintiffs intervened. Muhammad amended his complaint to add the State Department of Corrections and other defendants, and to seek certification of a class of Nation of Islam followers who are or will be incarcerated in the City and State correctional systems. The plaintiffs alleged violations of RFRA, the First Amendment, and the laws of New York State and City. However, a class was never certified; instead, the State and City defendants agreed to implement any injunctive relief awarded to the individual plaintiffs on a system-wide basis.[1]
 
 
 17
 At a seven-day bench trial conducted in December 1994 and January 1995, the court heard numerous witnesses (including prison officials and Nation of Islam inmates) and experts, and conducted a site visit. In the course of the trial, the State reached a settlement with the plaintiffs. Significantly, of the eight plaintiffs, only Muhammad asserted claims against the City defendants, and the trial of his claim against the City went forward. In the district court, Muhammad sought a declaratory judgment, compensatory damages, and prospective injunctive relief.
 
 
 18
 After making extensive findings of fact (most of which are uncontested on appeal), the district court determined that Muhammad was not entitled to relief on any of his claims against the City defendants. Muhammad's only challenge on appeal is to the district court's denial of prospective injunctive relief. Brief for Appellant at 3.
 
 
 19
 This Court heard oral argument on January 23, 1997. On June 25, the Supreme Court decided City of Boerne v. Flores, --- U.S. ----, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), which struck down RFRA as unconstitutional. Thereafter, we solicited letter briefs addressing the impact of City of Boerne on this appeal.
 
 DISCUSSION
 
 20
 An issue of mootness is presented by the circumstance that Muhammad, who is no longer incarcerated by the DOC, appeals only the district court's decision to deny prospective injunctive relief. Brief for Appellant at 3. Neither party has raised the issue of mootness on appeal, but because it is a jurisdictional question, we must "examine the issue sua sponte when it emerges from the record." Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 82 (2d Cir.1996). Our inability to review a moot case "derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam) (citations omitted).
 
 
 21
 When "the parties lack a legally cognizable interest in the outcome" of a case, it is moot and the federal courts lack jurisdiction. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citation omitted). An alternative formulation of this rule requires "that a plaintiff have a 'personal stake' in the litigation." Fox v. Board of Trustees, 42 F.3d 135, 140 (2d Cir.1994), cert. denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)). The mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of the appeal." Cook v. Colgate University, 992 F.2d 17, 19 (2d Cir.1993) (citations omitted).
 
 
 22
 This appeal was filed at least four years after Muhammad was released from the DOC's custody.[2] Requiring the DOC to conduct separate congregate services for Nation of Islam inmates and to recruit chaplains on a basis that would allow for the hiring of Nation of Islam ministers would afford no "legally cognizable benefits" to Muhammad, who is no longer imprisoned within the DOC system. See Fox, 42 F.3d at 140. Because Muhammad lacks any continuing personal stake in the outcome of this appeal, it is rendered moot.
 
 
 23
 The City and State defendants below stipulated that they would not seek to have the action dismissed on the bases of standing, mootness, or ripeness. But this was a questionable arrangement. Such an agreement disserves the courts: lawyers, who are officers of the court, should not undertake to overlook jurisdictional questions that courts in the first instance expect the parties to raise. Any attempt to waive an argument based upon mootness "ignores the jurisdictional nature of the Article III requirement that federal courts adjudicate only 'Cases' and 'Controversies.' " Fox, 42 F.3d at 139. "[T]he condition of mootness is not a defense that could be waived by the Defendants, but rather is a condition that deprives the court of subject matter jurisdiction." Id. at 140.[3]
 
 
 24
 Concededly, there exists an exception to the mootness doctrine for circumstances which are "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This exception, however, is applied "only in exceptional situations." Dennin v. Connecticut Interscholastic Athletic Conference, Inc., 94 F.3d 96, 101 (2d Cir.1996) (citations and internal quotation marks omitted). It is generally invoked to preserve a class action in which some members of the class retain a cognizable interest in the outcome after the claim of the named representative has become moot. See, e.g., Gerstein v. Pugh, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975). No class was ever certified in this case, nor was certification ultimately sought by Muhammad or any of the other plaintiffs.
 
 
 25
 In the absence of a class action, the "capable of repetition, yet evading review" exception will not be applied unless "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam). With respect to the first prong of this test, a question might be raised as to whether any individual would be in the DOC's custody long enough to litigate this challenge to its religious policies, since most prisoners are held in DOC facilities only until their cases are brought to trial. However, we need not address this question because Muhammad himself did not even attempt to change the DOC's policy while it still affected him directly: this action was filed some years after his release from the City's custody.
 
 
 26
 In this context, the second prong of the Murphy inquiry requires the appellant to show that "these same parties are reasonably likely to find themselves again in dispute over the issues raised in this appeal." Video Tutorial Services, Inc. v. MCI Telecommunications Corp., 79 F.3d 3, 6 (2d Cir.1996) (per curiam) (citations and internal quotation marks omitted). Muhammad cannot make this showing, for he has stated no basis for an expectation that he will again find himself in the custody of the DOC and subject to its policies. Thus, this test has not been satisfied as to either prong, and we cannot invoke the "capable of repetition" exception to the mootness doctrine in this case.
 
 
 27
 We have recognized that under certain circumstances, an individual may bring suit in a representative capacity without seeking certification as a class action. In such a case, the suit may survive even after the plaintiff ceases to have a legally cognizable interest in its outcome. In both Trachtman v. Anker, 563 F.2d 512, 514 n. 1 (2d Cir.1977), cert. denied, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978), and Brandon v. Board of Education, 635 F.2d 971, 973 (2d Cir.1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), the plaintiffs were high school students who headed student organizations and who sued the school boards for relief that served the interests of the student clubs they led. See Trachtman, 563 F.2d at 514 (plaintiff was editor-in-chief of student newspaper and sought to vindicate publication's right to conduct a survey); Brandon, 635 F.2d at 973 n. 1 (plaintiffs sued as representatives of "Students for Voluntary Prayer" and on behalf of all students similarly situated, seeking to secure the right to use school classroom for communal prayer). In each case, the court concluded that the plaintiff's graduation from high school did not moot the claim because the plaintiff was suing as a representative of similarly situated students notwithstanding the absence of any class certification.
 
 
 28
 Muhammad's claim is not an analogue of the students' claims in Trachtman and Brandon. Muhammad was not an inmate of the City jails at the time he commenced his action. A fortiori, he cannot be deemed to be a representative of the inmates similarly situated, because he had been released. In any event, the complaint did not identify Muhammad as a leader or representative ex officio and de facto of a group of inmates sharing the same interests.
 
 
 29
 We therefore conclude that Muhammad cannot and did not bring this suit in a representative capacity that would allow him to proceed absent class certification after his transfer from City custody. This ruling bears upon appellate jurisdiction. The district court had undoubted jurisdiction to decide Muhammad's personal claim for money damages. The district court decided that claim and no appeal with respect thereto has been pursued.
 
 CONCLUSION
 
 30
 Because Muhammad has appealed, in an individual capacity, the district court's denial of prospective injunctive relief against an institution whose policies no longer affect the appellant personally, this appeal is dismissed as moot.
 
 
 
 [1]
 The City and State defendants moved to dismiss on the ground that RFRA was unconstitutional; but Judge Preska had no occasion to reach the constitutionality issue because the State subsequently withdrew its challenge, and the court ruled that the City did not violate RFRA (constitutional or not)
 
 
 [2]
 Muhammad was released from the DOC's custody in 1991; this appeal was filed on January 10, 1996
 
 
 [3]
 In any event, Muhammad could not have moved for class certification on appeal. We have held that "in general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir.1994). Muhammad's claim against the City was already moot at the time when this appeal was filed, so class certification at that point would not have saved the appeal