**Mary McGINTY, as Administratrix of the Estate of Maureen Nash, and James Nash, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**STATE OF NEW YORK, New York State and Local Employees Retirement System, and New York State Department of Taxation and Finance, Defendants.**

No. 96–CV–1679 (LEK/RWS).

United States District Court,
N.D. New York.

July 22, 1998.

Kingsley and Towne, P.C., Albany, NY, James T. Towne, Jr., of counsel, Butler, Fitzgerald & Potter, New York City, Stuart Potter, of counsel, for Plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, Robert A. Siegfried, Asst. Attorney General, of counsel, for Defendants.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Plaintiffs have brought this action alleging a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), as amended by the Older Workers Benefit Protection Act of 1990 ("OWBPA"), Pub.L. 101–433, Title I, § 103, 104 Stat. 978 (Oct. 16, 1990). Presently before the Court is defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). A number of motions by the plaintiffs are also before the Court, including motions (1) for a preliminary injunction, (2) to strike defendants' fourth and seventh affirmative defenses, (3) to amend the complaint,[1] (3) for judgment on the pleadings and (4) to compel various discovery requests and impose sanctions. Because the Court finds that this action is moot, defendants' motion is granted and plaintiffs' motions are denied.

### I. Background

Plaintiff Mary McGinty ("McGinty") is the daughter of Maureen Nash ("Mrs.Nash") and

---

1. Plaintiffs seek to amend the complaint to indicate that their action is discontinued insofar as it is based on alleged discriminatory death benefits paid to policemen, firemen, corrections officers and sanitation-men. They also seek to amend the caption to substitute the word "Administratrix" with "Executrix."

the Executrix of her Estate.[2] Prior to her death, Mrs. Nash was employed by the defendant State of New York ("New York") in the offices of the defendant New York State Department of Taxation and Finance. During this employment, Mrs. Nash was a member of the defendant New York State and Local Employees' Retirement System ("Retirement System").[3]

The Retirement System is established and maintained by New York for the benefit of employees of the state and local governments of New York. Mrs. Nash joined on or about October 17, 1985 at the age of 53. She died on February 17, 1995 at the age of 62.

As a member of the Retirement System, Mrs. Nash was entitled to certain benefits. Among these was a death benefit owed to her named beneficiary, plaintiff James Nash. Mrs. Nash's entitlement to a death benefit is governed by N.Y. Retire. & Soc. Sec. Law ("RSSL") § 448 (McKinney Supp.1998). Under this provision, the amount of the death benefit is reduced for members who joined at age fifty-two or older and is also reduced for those members who died at age sixty-one or older. Because of both the age at which Mrs. Nash became a member of the Retirement System and the age at which she died, the death benefit provided to James Nash was subject to reductions.

This collective action was commenced on October 17, 1996 and served on defendants on October 24, 1996. In their complaint, plaintiffs allege that the reduction in the amount of the death benefit was in violation of the ADEA as amended by the OWBPA. They also allege that the Retirement System has violated the ADEA in discriminating on the basis of age in the payment of disability benefits.

■ Under 29 U.S.C. § 623(f)(2)(B), a bona fide benefit plan which discriminates on the basis of age may be lawful if,

for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker....

29 U.S.C.A. § 623(f)(2)(B)(i) (West.Supp. 1998). In short, under the new law, distinctions in benefits on the basis of age must be cost-justified. In this case, defendants have conceded that the distinctions which the Retirement System made in determining death benefits were not cost-justified. They assert, however, that the problem has been corrected and this action is therefore moot. They also argue that this action is barred by the Eleventh Amendment and that the named plaintiffs do not have standing to bring an action for discrimination in the distribution of disability benefits.

## II. Discussion

### A. Standard of Review

■ In deciding a Rule 12(b)(1) motion, the Court construes the complaint broadly and liberally in conformity with Fed.R.Civ.P. 8(f) "but argumentative inferences favorable to the pleader will not be drawn." 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1350, at 218–219 (1990 & Supp. 1991). The parties may use affidavits and other materials beyond the pleadings themselves to challenge or to support the court's subject matter jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir.1976), *opinion modified, Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Once challenged, the burden of establishing a federal court's subject matter jurisdiction typically rests on the party asserting jurisdiction. *See Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Grafon Corp.*

---

**2.** As previously noted, the caption erroneously names her as "Administratrix." Plaintiffs have moved to amend the complaint, *inter alia,* to correct this error.

**3.** The Retirement System is comprised of two separate systems, the New York State and Local Employees' Retirement System and the New York State Police and Fire Retirement System. McManaman First Aff. ¶ 1. Mrs. Nash was specifically member of the former system, and the statutory provisions cited are those which apply to her retirement system in particular.

*v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979). However, where it is asserted that jurisdiction is lacking because of mootness, courts have placed the initial burden of demonstrating mootness on the defendant. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (case was dismissed where defendants had met their burden of demonstrating mootness); *but see Video Tutorial Services, Inc. v. MCI Telecommunications Corp.,* 79 F.3d 3, 6 (2d Cir.1996) (plaintiff bears burden of demonstrating that action which is otherwise moot falls under the mootness exception for cases that are "capable of repetition, yet evading review").

### B. Mootness

■ Defendants argue that the case must be dismissed because it is moot. The mootness doctrine is based on the rule under Article III of the Constitution that federal courts may adjudicate only actual, ongoing cases or controversies. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). A case is moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Blackwelder v. Safnauer,* 866 F.2d 548, 551 (2d Cir.1989) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)); *see also Muhammad v. City of New York Department of Corrections,* 126 F.3d 119, 123 (2d Cir.1997) (a case is moot when plaintiff lacks "a 'personal stake' in the litigation." (citation omitted)). When this occurs, the Constitution's case or controversy requirement is not satisfied and the federal court lacks subject matter jurisdiction over the action. *New York City Employees' Ret. Sys. v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir.1992). A moot action must therefore be dismissed even if the case was live at the outset. *Id.*

Defendants argue that the action is moot because, although the statutory provisions containing the discriminatory benefit structure have not been amended, the Retirement System has been brought into compliance with the ADEA through administrative means. They further assert that those members of the Retirement System who died after October 12, 1992[4] and were subject to the discriminatory provisions have been given such additional money with interest that they would be entitled to under the ADEA-compliant system.

Specifically, a total of 672 members covered by the RSSL death benefit provisions died during the relevant period. The total additional amount owing to the beneficiaries of these members under the revised system was $20,790,558.40. McManaman First Aff. ¶ 32. As of July 25, 1997, defendants had paid out $20,362,916.40 or 97.9%. McManaman Second Aff. ¶ 30. According to the defendants, the remaining eligible beneficiaries will be paid the additional amounts due them as soon as they can be located. McManaman First Aff. ¶ 33. In the case of Mrs. Nash, defendants allege without dispute that they offered James Nash his additional benefits with interest but were told by Mr. Nash's attorneys not to have any direct contact with the plaintiff. Thereafter, defendants have indicated to Mr. Nash that payment would be made as soon as it is authorized by his attorneys. *Id.* ¶ 45.

■ Voluntary cessation of the allegedly illegal conduct which gave rise to a case does not generally deprive a tribunal of power to hear and determine the case. *Campbell v. Greisberger,* 80 F.3d 703, 706–07 (2d Cir. 1996). However, a case may be found moot if, upon such cessation, "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 707 (internal quotations omitted) (citing *Los Angeles County v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).

### 1. Eradication of the Effects of the Violation

Plaintiffs argue that it is a disputed fact as to whether defendants' measures have cured

---

**4.** October 16, 1992 is the date on which States are required to be in compliance with OWBPA. *See* 29 U.S.C.A. § 623, Historical and Statutory Notes, "Effective Date of 1990 Amendment" (West Supp.1998).

the effects of the discrimination from which the former benefit structure suffered. They also argue that even if the new structure is non-discriminatory, mootness is precluded by the dispute over whether defendants paid the correct rate of interest on the unpaid death benefits. Plaintiffs further argue that the action is not moot because defendants may still owe liquidated damages.

### i. Elimination of the Age–Discriminatory Structure

█ To revise the system and reverse the effects of past discrimination, defendants first obtained the services of Buck Consulting to identify areas of the benefit structure that were discriminatory and to propose corrections. These proposed corrections were then implemented. Two changes in particular are relevant.

The first change was to the reduction based on the age at which a member joined. A death benefit[5] is calculated based in part on the amount of credited service a member had at the time of death. The benefit of a member with more than one and less than two years credit may be up to a maximum of the member's last annual salary. For members with between two and under three years, their beneficiary receives up to twice the last year's salary. A beneficiary of a member with three years or more of credited service receives up to three times the last year's salary. Under the old rules, however, if a member commenced their employment at age 52 or older, this maximum was reduced. Buck Consulting found the reduction not to be justified by cost and the current maximum is not affected by the age at which employment begins.

The second change involved a rule reducing the amount of a death benefit provided to beneficiaries of members whose age at death exceeded 61. The old reduction was 10% for each year over the limit up to a reduction of 90% (i.e. beneficiaries would receive 10% of what they would otherwise be entitled to). This was also found not to be cost justified, but Buck Consulting did find that a reduction of 4% for each year by which the member's age at death exceeded 60 was justified. Towne Decl.Exh. D at 27. Defendants allege that they have now substituted the 10% reduction with a 4% reduction.

Plaintiffs challenge whether or not the 4% reduction is cost-justified. However, this rate is based on the professional conclusions of the consulting group hired by defendants specifically for the purpose of determining these issues. *See* Towne Decl. (April 30, 1997) Exh. D at 27. The plaintiffs have provided no evidence to contradict or place in doubt the findings of Buck Consulting's report. The Court therefore finds that defendants have adequately shown that mootness is not precluded by the issue of whether the reduction rate is appropriate.

### ii. Interest Rate

█ Plaintiffs also argue that the effects of the violations have not been eradicated because defendants have applied the wrong rate of interest to the supplemental payments of death benefits. Defendants have paid interest based on N.Y. Retire. & Soc. Sec. Law § 61–a, "Payment of Interest on Death Benefits."[6] Plaintiffs argue that the interest rate applicable is the pre-judgment rate for breaches of contract under N.Y.C.P.L.R. §§ 5001, 5002 and 5004. However, they provide no law to this effect, and it is apparent that the provisions governing a breach of contract are inapplicable. What is alleged here is a breach of obligations imposed by federal law, not by any agreement with the plaintiffs.

---

**5.** Members actually choose between two forms of death benefits. *See* N.Y. Retire. & Soc. Sec. §§ 448(1) and (2) (McKinney & Supp.1998). Only the benefit defined by § 448(2) is relevant here. Reference to a death benefit is accordingly reference to the benefit as calculated under this section.

**6.** RSSL § 61–a states

> Interest shall accrue against unpaid accidental and ordinary death benefits ... from the date of death of a member until payment thereof is made.... Interest against the unpaid benefit shall be at the rate provided for by subdivision one of section three-a of the general municipal law.

N.Y. Retire. & Soc. Sec. Law § 61–a (McKinney Supp.1998).

■■■■ The Court notes that Article V, § 7 of the New York Constitution does state, in part, that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." N.Y. Const. Art. V, § 7 (McKinney 1987). This section effectively prohibits official action which adversely affects the amount of retirement benefits owed to a member on retirement under the laws and conditions existing at the time of his entrance into retirement system membership. *Mutterperl v. Levitt,* 89 Misc.2d 428, 393 N.Y.S.2d 837, 839 (N.Y.Sup.Ct.1975), *aff'd,* 41 N.Y.2d 956, 394 N.Y.S.2d 881, 363 N.E.2d 587 (N.Y.1977). Here, it is undisputed that Mrs. Nash joined prior to the passage of the OWBPA and thus could not conceivably consider it part of the contractual relationship.

■■■■ Moreover, even if Mrs. Nash had joined after the passage of the OWBPA, its anti-discrimination provisions would still not be a contractual right. The laws and conditions relevant in this context are those defined by the state which explicitly define the contractual relationship between the parties at the time of membership. *See Gagliardo v. Dinkins,* 89 N.Y.2d 62, 72, 651 N.Y.S.2d 368, 674 N.E.2d 298 (N.Y.), *rearg. denied,* 89 N.Y.2d 917, 653 N.Y.S.2d 921, 676 N.E.2d 503 *rearg. denied, Ranieri v. Dinkins,* 89 N.Y.2d 917, 653 N.Y.S.2d 921, 676 N.E.2d 503 (1996) (article V, § 7 "preserves the benefits of the pension contract relationship rather than 'naked pension rights qua rights.'" (citation omitted)). The court in *Gagliardo* emphasized that plaintiffs must show that "some benefit set forth in the pension contract of the Administrative Code is diminished or impaired." *Id.* (internal quotations and citation omitted). Thus, the new structure is only contractually protected after it is adopted and only for those members who join after its adoption.

■■■■ The Court also notes that, under New York precedent, a beneficiary of a state retirement plan who is not also a member does not receive the constitutional protection of Article V, § 7. *See Newman v. Levitt,* 84 Misc.2d 903, 377 N.Y.S.2d 962, 964 (N.Y.Sup. Ct.1976). The named plaintiffs do not allege that they are members of the Retirement System and therefore are not entitled to the contractual protection in any case. Plaintiffs' argument that the rate of interest should be based on the rate applicable to a breach of contract and that this issue precludes a finding of mootness is therefore rejected.

### iii. Liquidated Damages

Finally, plaintiffs argue that in addition to the benefits, they are owed liquidated (i.e.double) damages. A plaintiff suing for violation of the ADEA may receive liquidated damages "only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). "Willful" in this context means that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Here, it is not disputed that the defendants knew that the old benefit structure discriminated on the basis of age without cost-justification.

■■■■ However, the Court notes that imposing of liquidated damages depends on a finding of "conduct" which is willful. *Hazen Paper Co., id.; see also Stratton v. Department For the Aging For the City of New York,* 132 F.3d 869, 881 (2d Cir.1997) (employer "acts willfully if it 'knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" (quoting *Hazen,* 507 U.S. at 617, 113 S.Ct. 1701)). In this case, the violation was, in the first instance, a result of the failure of the State government to amend the relevant statute and thus not from any affirmative conduct. In the few cases addressing analogous situations, courts finding willfulness have focused on some affirmative decision to adopt a proscribed policy or law. Thus, in *Snair v. City of Clearwater,* 787 F.Supp. 1401, 1411–12 (M.D.Fla. 1992), the court found willfulness where the defendant ignored advice of counsel regarding the validity of a modification at the time the defendant passed it. *Compare E.E.O.C. v. State of Ill.,* 69 F.3d 167, 169 (7th Cir.1995) (state not liable under ADEA for school district's application of state mandatory retirement law where liability was based on failure

to amend the law). Here, by contrast, there was no modification or other affirmative act, only a failure to pass new legislation. This is insufficient to constitute willful conduct.

 The Court also finds the continued implementation of the discriminatory statutory provisions by the Retirement System does not constitute a willful violation. Assuming that a state may be subject to liquidated damages for conduct taken by its officials even where such conduct is mandated by state law, *see E.E.O.C.,* 69 F.3d at 168 (court found that plaintiffs could have sued school district for enforcing discriminatory state law mandatory retirement provisions), the conduct in question must still consist of affirmative actions, not of the failure to take action. *See, e.g., Padilla v. Metro–North Commuter Railroad,* 92 F.3d 117, 124 (2d Cir .1996) (plaintiff's demotion constituted willful violation of ADEA); *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 280–81 (2d Cir.1987) (discharge constituted willful violation).

Here, the Retirement System was required not merely to refrain from enforcing a non-compliant provision but to choose and implement a new cost-justified benefit structure to bring the Retirement System into compliance with federal law. The failure of the defendants between 1992 and 1996 to create a new benefit structure administratively does not constitute the affirmative conduct required to establish a willful violation of the ADEA. The Court therefore finds as a matter of law that liquidated damages are not owing and that defendants have thus demonstrated that the effects of the ADEA violations have been eradicated.

### 2. Reasonable Expectation of Recurrence

 When a defendant attempts to obtain dismissal on mootness grounds, there must be a showing by the defendant that " 'it [is] absolutely clear that the allegedly wrongful behavior could not reasonable be expected to recur ... [or, put another way, that] the likelihood of further violations is sufficiently remote to make ... [judicial] relief unnecessary.' " *Ahrens v. Bowen,* 852 F.2d 49, 52 (2d

Cir.1988) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (quoting in turn *U.S. v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203–04, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968))). However, "[s]ome deference must be accorded to a state's representations that certain conduct has been discontinued." *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,* 981 F.2d 50, 59 (2d Cir.1992); *see also Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir. 1991) ("When the defendants are public officials ..., we place greater stock in their acts of self-correction, so long as they appear genuine."); *Ragsdale v. Turnock,* 841 F.2d 1358, 1364–66 (7th Cir.1988), appeal dismissed, *Turnock v. Ragsdale,* 503 U.S. 916, 112 S.Ct. 1309, 117 L.Ed.2d 510 (1992) (court held that nonenforcement of a statute for several years on basis of Supreme Court precedent was basis for mooting action, as "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties."). The Court finds that the defendants have made a sufficient showing that the self-correction is genuine and that the likelihood of further violations is remote.

The record establishes that defendants have taken extensive affirmative steps to correct the discriminatory aspects of the Retirement System. As previously noted, defendants commissioned Buck Consulting in 1992 to determine whether and to what extent the system then in force violated the ADEA. They then aided the Governor in drafting legislation adopting Buck Consulting's recommendations, which was introduced in 1993 and 1994 but not adopted by the New York legislature. McManaman Second Aff. ¶ 30. In September of 1995, John McManaman ("McManaman"), an Assistant Deputy Comptroller,[7] recommended to John Mauhs ("Mauhs"), another Deputy Comptroller, that the Buck Consulting report be implemented administratively.

---

7. The State Comptroller acts as Trustee for the Common Retirement Fund ("CFR"), which in-

cludes the Retirement System at issue. McManaman First Aff. ¶ 9.

A formal request to Paula Chester ("Chester"), Counsel to the Comptroller and Mauhs was made on May 9, 1996. In an e-mail message around May 30, 1996, Chester indicated the Comptroller's approval of the plan. *See* McManaman First Aff.Exh. 7. Among other necessary steps in implementing the changes, defendants were required to reprogram the new benefit formulae into their mainframe computer. This action was ordered by memorandum to the senior programmer on June 3, 1996. McManaman First Aff.Exh. 8. The Retirement System then commenced calculating death benefits under a revised system on June 20, 1996. On July 5, 1996, defendants began recalculating death benefits given out for members who had deceased on or after October 17, 1992. As mentioned above, defendants have substantially completed the payment of these additional amounts, at a cost of over twenty million dollars.

Additional steps have been taken to inform employers and members of the changes. Letters were transmitted to all employers which employ members of the Retirement System detailing the changes on or around August 1, 1996. *See* McManaman First Aff. ¶ 38, Exh. 9. In the letters, employers were informed that "[w]e are in the process of revising our membership applications and our summary plan booklets to include these changes." *Id.* Defendants revised their registration form in November of 1996. *See* McManaman First Aff. ¶ 43, Exh. 14. In addition, the Fall 1996 issue of a Retirement System publication called "the Update" contained an article announcing the changes. Copies for all members were mailed to their employers with instructions to distribute them.

The very breadth and cost of these steps is persuasive evidence that the efforts were genuine and not merely a temporary change intended to deprive the Court of jurisdiction. The record also reveals that the Retirement System and the State Comptroller are continuing to pursue a legislative solution and in 1997, they resubmitted a proposal to amend the relevant statutory provisions. *See* McManaman Second Aff.Exh. 2. Based on these facts, the Court finds that the changes are not likely to be reversed.

Plaintiffs argue that the timing of the changes indicates otherwise. They assert that the changes were a direct and immediate response to plaintiffs' filing of a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). They cite to *Ahrens v. Bowen*, 852 F.2d 49 (2d Cir.1988) for the proposition that "[t]his type of attempt to affirmatively create mootness in order to limit liability" is "abhorrent." Pl. Memorandum In Opposition to Motion to Dismiss at 15.

In that case, the Secretary of the Department of Health and Human Services withheld benefits to plaintiff on account of alleged overpayments. However, after the suit was commenced and "on the eve of plaintiff's motion for summary judgment," the Secretary waived the claim of overpayments and asserted that the action was therefore moot. *Ahrens*, 852 F.2d at 53. The Second Circuit found that the district court was not "clearly erroneous" in concluding that the possibility of recurrence was far from remote. The court noted that the secretary's conduct in the lawsuit made it likely that he "harbored . . . an intent [to again seek to evade review of future violations by waiving recoupment.]" *Id.* Specifically, the court noted that "[I]t is precisely his insistence on the validity of the challenged practice that makes it 'reasonable' to expect that the conduct will be repeated." *Id.*

The current action is clearly distinguishable in a number of respects. First, whereas the defendant in *Ahrens* merely waived the application of a regulation, an act which is both easily done and imposes no barrier on future applications, the defendants here have engaged in extensive and costly steps to put in place a new benefit structure. Putting aside the good faith demonstrated by the enormous cost of the corrections, it is noted that reversal would require a new series of technical and administrative actions which suggests that reversal is indeed a remote likelihood.

Further distinguishing *Ahrens* is the extensive evidence that defendants have never asserted that the practice was in compliance with federal law. Indeed, the record sup-

ports their assertions that they have, since the passage of the OWBPA, endeavored to have the relevant state statute amended.

Further, the plaintiffs in this case assert only that defendants acted in reaction to receiving a notice of plaintiffs' EEOC charge,[8] not that the defendants acted in response to an actual law suit, much less "on the eve of [a] motion for summary judgment." *Ahrens*, 852 F.2d at 53. In light of the defendants' multiple attempts over a period of years to bring the Retirement System into compliance with the ADEA and the other facts discussed above, the timing of the changes does not raise the same implication that the defendants are not genuine in implementing corrective action.

Plaintiffs also argue that because the statute has not been amended, there is a reasonable expectation that a Comptroller might reverse the new benefit structure in the future. The Court disagrees. The difficulty in doing such an action has already been noted. Further, the consistent position of the Retirement System has been that its old benefit structure was not in compliance with federal law. Any suggestion that a future Comptroller will ignore requirements of federal law that have been conceded for six years and actively implemented by the current officials is too speculative to preclude mootness. Therefore, the action must be dismissed for lack of subject matter jurisdiction.[9]

### C. Standing To Bring Collective Action Under ADEA

Plaintiffs have brought this collective action on behalf of those who have suffered discrimination both in the receipt of death benefits and the receipt of disability benefits.[10] As discussed above, the action with regard to death benefits is moot. Defendants argue that the named plaintiffs do not have standing to bring an action with regard to disability benefits. The Court agrees.

To bring a collective action under § 216(b) of the ADEA, plaintiffs must satisfy two conditions. *Krueger v. New York Telephone Co.*, 163 F.R.D. 433 (S.D.N.Y.1995). First, the named plaintiffs and the proposed members of the class must be "similarly situated." *Id.* Second, the proposed members must "opt-in" by consenting in writing to be bound by the result of the suit. *Id.* In this case, the named plaintiffs are clearly not similarly situated to plaintiffs alleging discrimination in disability benefits. The two forms of benefits involve different provisions and different triggering events. Further, the allegations which provide the named plaintiffs with a claim to an actual injury pertain to that part of the action which is moot. Thus, the named plaintiffs no longer have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). They are therefore in no position to represent parties whose injuries have not been compensated, if indeed there are any such parties. The entire action must therefore be dismissed for lack of jurisdiction.

### D. Plaintiffs' Motions

Because the action is dismissed as moot, plaintiffs' motions for preliminary injunction, for judgment on the pleadings, to strike defendants' affirmative defenses, to compel discovery and to compel payments are denied, either as moot or by the same arguments

---

**8.** Defendants concede to receiving the EEOC Notice of Charge on April 11, 1996. Further, they concede that the administrative changes were first formally proposed roughly a month later, on May 9, 1996.

**9.** Accordingly, the Court need not address defendants' arguments that subject matter jurisdiction is lacking because of Eleventh Amendment immunity and an absence of standing.

**10.** 29 U.S.C. § 216, made applicable to ADEA actions under § 626(b), states, *inter alia,*

An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
29 U.S.C.A. § 216(b) (West.Supp.1998).

discussed above. Because the motion to compel discovery is denied, plaintiffs' motion for sanctions under Fed.R.Civ.P. Rule 37 must also be denied. *See* Fed.R.Civ.P. 37(a)(4) (providing for sanctions if "the motion is granted or if the disclosure or requested discovery is provided after the motion is filed"). Finally, because the proposed amendment to the complaint does not affect any of the conclusions of the Court with regard to mootness, the motion to amend the complaint is also denied.

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss is GRANTED and the action is therefore dismissed in its entirety; and it is further

ORDERED that plaintiffs' motion for preliminary injunction is DENIED; and it is further

ORDERED that plaintiffs' motion for judgment on the pleadings and to compel payments is DENIED; and it is further

ORDERED that plaintiffs' motion to compel defendants to provide updated mailing lists is DENIED; and it is further

ORDERED that plaintiffs' motion to strike defendants' fourth affirmative defense or in the alternative for partial summary judgment is DENIED; and it is further

ORDERED that plaintiffs' motion to strike defendants' seventh defense is DENIED; and it is further

ORDERED that plaintiffs' motion to amend the complaint is DENIED; and it is further

ORDERED that plaintiffs' motion to compel answers to plaintiffs' First Set of Interrogatories is DENIED; and it is further

ORDERED that the Clerk serve of this order on all parties by regular mail.

IT IS SO ORDERED.